UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SASHA LEWIS,

                          Plaintiff,

                 -v.-

SAMSUNG SDI CO. LTD.; SAMSUNG,
INC.; ABC CORPORATIONS (1-10)
*(FICTITIOUS ENTITIES),*

                          Defendants.

---

23 Civ. 6643 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

Plaintiff Sasha Lewis brought this action against Defendants Samsung

SDI Co. Ltd. ("SDI"), a designer and manufacturer of lithium-ion batteries,

Samsung, Inc., and ABC Corporations (1-10) (fictitious entities), alleging claims

of, *inter alia*, strict product liability, breach of an express warranty, breach of

the implied warranty of merchantability, breach of the implied warranty of

fitness for a particular purpose, failure to warn, and negligence, all under New

York common law.  Before the Court is SDI's motion to dismiss Plaintiff's

Second Amended Complaint, the operative pleading in this case, for lack of

personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  For

the reasons set forth in the remainder of this Opinion, the Court grants SDI's

motion and dismisses all claims against it.

---

[1]     Olivia Ferdinand, a rising second-year student at Harvard Law School, provided
        substantial assistance in the research and drafting of this Opinion.

## BACKGROUND[2]

### A.    Factual Background

#### 1.    Plaintiff

Plaintiff is a resident of New York.  (SAC ¶ 2).  On or about September 9, 2020 (the "Accident Date"), Plaintiff was the owner of a battery-powered scooter bearing the visible markings of "Wuxing," "38V 2019.10 76," "Wuxing DK11," and "01345512.5."  (*Id.* ¶ 12).  Plaintiff does not allege where or when she purchased the scooter.  Plaintiff contends that the scooter was equipped with a rechargeable battery manufactured by a "Samsung" entity.  (*Id.* ¶¶ 14, 24).  On the Accident Date, as Plaintiff was charging the scooter with its charging apparatus — which she also alleges to have been distributed and supplied by "Defendants" — "a dangerous condition developed and ultimately a fire started."  (*Id.* ¶¶ 13, 16, 24).  As a result, Plaintiff sustained "serious and permanent bodily injuries."  (*Id.* ¶ 37).

#### 2.    SDI

SDI is a foreign business corporation incorporated in South Korea, with its headquarters and principal place of business in Yongin-si, Gyeonggi-do, South Korea.  (SAC ¶ 3; Han Decl. ¶ 6).  According to SDI, it is not registered to

---

[2]    This Opinion draws its facts from Plaintiff's Second Amended Complaint filed on September 26, 2024 ("SAC" (Dkt. #85)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also sources facts from the Declaration of Young Chan Han submitted in support of SDI's motion to dismiss ("Han Decl." (Dkt. #86-3)).

For ease of reference, the Court refers to SDI's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #86-1); to Plaintiff's memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #89); and to SDI's reply memorandum of law in further support of its motion to dismiss as "Def. Reply" (Dkt. #90).

conduct business in New York; does not maintain an office or bank account in New York; has never conducted business in New York or with any entity based in New York; has never paid or incurred an obligation to pay taxes in New York; and has no employees, officers, agents, directors, or representatives in New York. (Han Decl. ¶¶ 7-12). Plaintiff offers neither evidence nor allegations to the contrary.

Instead, Plaintiff alleges that "Defendants," which she defines to include SDI, "caused the subject [b]attery to be manufactured"; "caused the subject [b]attery to be sold" and "utilized in the state of New York"; "caused the subject [b]attery to be utilized in [Plaintiff's s]cooter"; and "marketed" and "distributed" the subject battery and charger. (SAC ¶¶ 17-24). Notably, Plaintiff does not allege that the manufacturing occurred in New York, or that SDI marketed or distributed the subject battery and charger to New York residents specifically. Plaintiff also does not make any allegations regarding SDI's manufacturing or distribution chain (*i.e.*, how the subject battery, or others like it, came to be in New York).

For its part, SDI explains that it manufactures different models of lithium-ion battery cells, which are used to power a wide range of rechargeable products, including electric vehicles, power tools, and laptops. (Han Decl. ¶ 13). Its battery cells are designed to function as part of sealed battery packs. (*See id.*). SDI does not sell battery cells for individual use outside a battery pack, and it has never authorized any third party to do so. (*See id.* ¶¶ 13, 14). SDI exclusively markets and sells its lithium-ion battery cells to companies it

deems sophisticated. (*Id.* ¶ 16). It generally sells to two categories of companies, to whom SDI refers as "Packers" and "Manufacturers." (*Id.*). Packers purchase SDI's battery cells to assemble them into sealed battery packs, which Packers then sell to their own corporate customers. (*Id.*). Manufacturers purchase either preassembled sealed battery packs or battery cells from SDI and then incorporate the batteries into their own, pre-authorized products. (*Id.*). When Manufacturers purchase battery cells, they first assemble them into sealed battery packs before incorporating the batteries into their products. (*Id.*).

As potentially relevant here, SDI asserts that it does not have any customers (*i.e.*, Packers or Manufacturers) or distributors based in New York; it "does not design, manufacture, sell, distribute, market, or provide customer support for any of its battery cells or battery packs in New York"; and it does not work with any "entities who purchase or take delivery of SDI's [batteries] for purposes of resale or distribution to other distributors, wholesalers, retailers, or resellers [ ] in the United States, including any distributors based in New York, who serve the New York market, or who serve a regional area in the United States that encompasses New York." (Han Decl. ¶¶ 18-20). SDI also "has never sold or supplied battery cells or battery packs to 'Wuxing' electric scooters or for electric scooters with … 'Wuxing' markings[.]" (*Id.* ¶ 23). Finally, SDI avers that it has no knowledge or control over its batteries after the point of sale. (*Id.* ¶ 17).

**B.    Procedural Background**

Plaintiff commenced this action by filing her initial complaint on July 31, 2023.  (Dkt. #1).  On August 4, 2023, Plaintiff filed a corrected complaint naming the entities Samsung Electronics America, Inc.; Samsung Electronics USA, Inc.; Samsung Electronics, L.L.C.; Samsung SDI America, Inc.; Samsung Corp.; Samsung, Inc.; and ABC Corporations 1-10 as Defendants.  (Dkt. #15).

On September 6, 2023, Samsung SDI America, Inc. filed a pre-motion letter in anticipation of filing a motion to dismiss, primarily on the basis of lack of personal jurisdiction.  (Dkt. #19).  The Court held a pre-motion conference on October 6, 2023, and — in view of Samsung SDI America, Inc.'s assertions that it had "never manufactured, sold, distributed, or otherwise placed into the stream of commerce batteries for use with electric scooters" (*id.*) — ordered a period of jurisdictional discovery (*see* October 6, 2023 Minute Entry; *see also* Dkt. #51).

On November 28, 2023, the Clerk of Court issued Certificates of Default as to each of Samsung Electronics America, Inc. (Dkt. #36); Samsung Electronics USA, Inc. (Dkt. #40); Samsung Electronics, L.L.C. (Dkt. #38); Samsung Corp. (Dkt. #37); and Samsung, Inc. (Dkt. #39).  On December 15, 2023, the Court issued an order to show cause as to why a default judgment ought not be entered against these Defendants and in favor of Plaintiff, pursuant to Federal Rule of Civil Procedure 55(b)(2), based upon Defendants' failure to answer or otherwise appear in this action (the "Order to Show Cause").  (Dkt. #45).  On January 16, 2024, Defendant Samsung Electronics

America, Inc. filed an answer to the Complaint (Dkt. #58), claiming that Defendant "had no involvement in the design, assembly, and/or manufacture of the subject [b]attery and related [c]harging [a]pparatus at issue in this litigation" (*id.* ¶ 23).

The Court held a hearing on the Order to Show Cause on February 21, 2024. (*See* February 21, 2024 Minute Entry). Due to issues with Plaintiff's service of the Order to Show Cause on Defendants Samsung Electronics USA, Inc.; Samsung Electronics, L.L.C.; and Samsung Corp., the Court declined to enter default judgments against them. The Court did, however, enter a default judgment against Defendant Samsung, Inc. (Dkt. #61). On Plaintiff's consent, the Court also terminated Defendant Samsung SDI America, Inc. (*See* February 21, 2024 Minute Entry).

On March 25, 2024, Plaintiff filed an amended complaint (the "First Amended Complaint") naming the entities Samsung Electronics USA, Inc.; Samsung SDI Co. Ltd.; Samsung Corp.; Samsung, Inc.; and ABC Corporations 1-10 as Defendants. (Dkt. #63). The First Amended Complaint did not name the entities Samsung Electronics America, Inc. or Samsung Electronics, L.L.C., so the Court dismissed each of those Defendants from the action. (*Id.*; *see also* Dkt. #64). Samsung Electronics USA, Inc. and Samsung Corp. were later terminated because they are inactive corporations. (Dkt. #81).

On May 13, 2024, Defendant SDI requested a pre-motion conference seeking leave to file a motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal

jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for violation of the applicable statute of limitations.  (Dkt. #77).  Plaintiff opposed the request. (Dkt. #78).  Accordingly, the Court ordered the remaining Defendants in the action to attend a pre-motion conference to address the next steps in this litigation.  (Dkt. #79).  At that conference, the Court set a briefing schedule for Defendant SDI's motion to dismiss, which schedule included a period for Plaintiff to file a second amended complaint.  (*See* July 10, 2024 Minute Entry).

On September 26, 2024, Plaintiff filed a second amended complaint (the "Second Amended Complaint"), the operative pleading in this action.  (Dkt. #85).  On October 4, 2024, Defendant SDI filed its motion to dismiss.  (Dkt. #86).  Plaintiff filed her opposition on November 4, 2024.  (Dkt. #89). Defendant SDI filed its reply on November 18, 2024, which concluded the briefing on this motion.  (Dkt. #90).

## DISCUSSION

### A.    Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  "A plaintiff must establish the court's jurisdiction with respect to each claim asserted[.]"  *Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal quotation marks omitted).  "Prior to discovery, a plaintiff

challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (citation omitted).

A court may consider materials beyond the pleadings in resolving a Rule 12(b)(2) motion, but it must credit the plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[ ]." *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) ("[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").[3]  Even then, the court should "not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted).  In a case such as this, where there is an affidavit of a defendant,

---

[3]    SDI submitted a declaration in support of its position on personal jurisdiction (the "Han Declaration"), which the Court may consider in connection with SDI's motion pursuant to Rule 12(b)(2).  (*See* Han Decl.).  *See Vasquez* v. *Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020) ("On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials.").

"[t]he [C]ourt assumes the verity of the [Plaintiff's] allegations 'to the extent they are uncontroverted by the [D]efendant's affidavit[].'" *Jonas* v. *Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (quoting *MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).

A district court deciding a motion to dismiss for lack of personal jurisdiction engages in a two-part analysis.[4]  *First*, the court must establish whether there is "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  In making this determination, the court "applies the forum state's personal jurisdiction rules," unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citation omitted).  *Second*, the court must decide whether "the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V.* v. *Çukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam) (citation omitted).

## B.    The Court Grants SDI's Motion to Dismiss Pursuant to Rule 12(b)(2) Because It Lacks Personal Jurisdiction Over SDI

It is well established that "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Spiegel* v.

---

[4]    "In general, ... before a district court may lawfully exercise personal jurisdiction over a party: ... the plaintiff's service of process upon the defendant must have been procedurally proper[.]" *Esso Expl. & Prod. Nigeria Ltd.* v. *Nigerian Nat'l Petro. Corp.*, 40 F.4th 56, 68-69 (2d Cir. 2022).  Because SDI does not challenge its service here, the Court does not address the issue further.

*Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010).  In New York, "there are two ways to establish personal jurisdiction over a defendant: [i] 'general jurisdiction' under [New York Civil Practice Law and Rules ("C.P.L.R.")] § 301; and [ii] 'specific jurisdiction' under [ ]C.P.L.R. § 302." *Brown* v. *Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 430 (S.D.N.Y. 2019).  "General, all-purpose jurisdiction permits a court to hear any and all claims against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [defendant's] contacts with the forum." *Gucci Am., Inc.* v. *Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks and citations omitted).

Here, Plaintiff argues that this Court has both general and specific jurisdiction over SDI.  *First*, Plaintiff claims that SDI is subject to general jurisdiction in New York because of its "continuous and systematic" contacts with the state.  (Pl. Opp. 10-12).  *Second*, Plaintiff contends that SDI is subject to specific jurisdiction in New York pursuant to (i) C.P.L.R. § 302(a)(1), because SDI transacts business in New York, and (ii) C.P.L.R. § 302(a)(3), because SDI committed a tortious act outside of New York causing injury to a person or property within New York.  (*Id.* at 3-4).  Defendant SDI counters that Plaintiff's claims should be dismissed because SDI is not subject to either general or specific jurisdiction in New York.  (Def. Br. 6-15).  The Court addresses each basis for personal jurisdiction in turn.  Finding neither general nor specific jurisdiction over SDI, the Court grants SDI's motion to dismiss.

### 1.    The Court Lacks General Jurisdiction over SDI

A court's exercise of general jurisdiction under C.P.L.R. § 301 requires that "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding*, 750 F.3d at 224 (internal quotation marks and citations omitted) (alterations adopted); *see generally Daimler AG* v. *Bauman*, 571 U.S. 117, 137-38 (2014).  A defendant's "continuous activity of some sort[ ] within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 927 (2011) (internal quotation marks omitted) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 318 (1945)). Rather, a corporation's "affiliations with the State" must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).  Broadly speaking, general jurisdiction does not lie over a party in a forum where that entity is neither incorporated nor maintains its principal place of business. *Id.* at 924.

Here, as alleged, SDI is incorporated and has its principal place of business in South Korea.  (SAC ¶ 3; *see also* Han Decl. ¶ 6).  Undaunted, Plaintiff seizes on an issue left open in the *Daimler* decision: "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." *Daimler*, 571 U.S. at 137 (emphasis in original).  From this snippet, Plaintiff argues that SDI's contacts

with New York are so "continuous and systematic" as to render it "essentially at home in that forum," because SDI "knowingly and deliberately placed its products into the New York market," as evident by SDI's global market share and the high prevalence of e-bikes in New York City.  (Pl. Opp. 10-11).

The Second Amended Complaint includes only two allegations in support of Plaintiff's general jurisdiction argument: (i) "SDI is the world's largest manufacturer of lithium-ion batteries for e-bikes and scooters" and (ii) "SDI's batteries are widely used in New York City, where approximately 65,000 e-bikes are operated by delivery workers alone, not including those used for personal purposes."  (SAC ¶ 4).  However, this purported evidence does not demonstrate any activity by SDI in New York, much less activity that would rise to the level required to "render [SDI] essentially at home."  *See Goodyear*, 564 U.S. at 919; *see also Tiffany (NJ) LLC, Tiffany & Co.* v. *China Merchs. Bank*, 589 F. App'x 550, 553 (2d Cir. 2014) (summary order) (finding against general jurisdiction over foreign banks maintaining branches and conducting business in New York); *Forstech Tech. Nigeria Ltd.* v. *Shell Petroleum Dev. Co. of Nigeria Ltd.*, No. 24 Civ. 7629 (PAE), 2025 WL 1435203, at *4 (S.D.N.Y. May 19, 2025) (finding that amended complaint fell "far short" of establishing general jurisdiction, where it did not plead that defendant company was registered to do business, held property or bank accounts, or had employees in New York, and did not show that New York received a majority of, or any, of its shipments or profits); *JDM Imp. Co. Inc.* v. *Shree Ramkrishna Exports Pvt., Ltd.*, No. 20 Civ. 8759 (VEC), 2021 WL 5450237, at *3 (S.D.N.Y. Nov. 19, 2021) (finding 14% of a

company's annual shipments to New York insufficient to establish general jurisdiction). Further, the Han Declaration makes plain that SDI is not registered to do business in New York, has no office in New York, and has no employees in New York. (Han Decl. ¶¶ 7-9). Plaintiff thus cannot support an argument that this constitutes an exceptional case where general jurisdiction would properly lie over a corporation "in a forum other than its formal place of incorporation or principal place of business." *Daimler*, 571 U.S. at 139 n.19. Accordingly, the Court cannot exercise general jurisdiction over SDI in New York.

### 2.    The Court Lacks Specific Jurisdiction Over SDI

New York's long-arm statute, contained in C.P.L.R. § 302(a), sets forth various bases on which a court may exercise specific personal jurisdiction over a non-domiciliary. *See* C.P.L.R. § 302(a). As discussed, this case concerns only two categories of conduct that could bring SDI under this Court's jurisdiction. The question before the Court is whether Defendant SDI has either (i) transacted business within the state or contracted anywhere to supply goods or services in the state or (ii) committed tortious acts outside New York that are felt in New York. (*See* Pl. Opp. 2-4 (arguing that this Court has jurisdiction pursuant to C.P.L.R. § 302(a)(1) and (3))).

### a.    Plaintiff Has Failed to Sufficiently Allege That SDI Transacts Business in New York Within the Meaning of C.P.L.R. § 302(a)(1)

SDI first argues that this Court lacks personal jurisdiction over it under New York's long-arm statute because SDI does not "transact business" in New

13

York within the meaning of C.P.L.R. § 302(a)(1).  (Def. Br. 10).  SDI further contends that, because it does not maintain any physical presence in, nor targets nor conducts any business or marketing efforts to, New York, its activities are insufficiently purposeful under C.P.L.R. § 302(a)(1).  (*Id.* at 10-11). The Court agrees.

To establish jurisdiction under C.P.L.R. § 302(a)(1), courts apply a two-part test, considering "[i] whether the defendant 'transacts any business' in New York and, if so, [ii] whether this cause of action 'aris[es] from' such a business transaction."  *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc.* v. *Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)).  "If either prong of the statute is not met, jurisdiction cannot be conferred under CPLR 302(a)(1)."  *Johnson* v. *Ward*, 4 N.Y.3d 516, 519 (2005). While C.P.L.R. § 302 is a "single act statute," such that "proof of one transaction in New York is sufficient to invoke jurisdiction," it is incumbent upon a plaintiff to demonstrate that "the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Chloé*, 616 F.3d at 170 (citation omitted).

With respect to the first part of the test, New York courts define "transact[ing] business" as purposeful activity — "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *McKee Elec. Co.* v. *Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967) (quoting *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958)).  What is more, courts look to

14

"the totality of the defendant's activities within the forum" to determine whether a defendant has "transact[ed] business" in such a way that it constitutes "purposeful activity" in satisfaction of the first part of the test. *Sterling Nat'l Bank & Trust Co. of N.Y.* v. *Fid. Mortg. Invs.*, 510 F.2d 870, 873-84 (2d Cir. 1975) (internal quotation marks and citation omitted).

Here, the first prong is not met, as Plaintiff has failed to allege facts or provide any evidence that SDI transacted business within New York, let alone in a purposeful manner. The Han Declaration establishes that "SDI has never sold battery cells or battery packs with the intent, knowledge, or expectation that such battery cells or battery packs would be sold, distributed, marketed, or used in New York." (Han Decl. ¶ 21). Plaintiff has not produced any affidavits or other evidence that refute these assertions regarding SDI's lack of business transactions with New York. Again, Plaintiff's Second Amended complaint alleges only that (i) "SDI is the world's largest manufacturer of lithium-ion batteries for e-bikes and scooters" and (ii) those batteries are "widely used in New York City, where approximately 65,000 e-bikes are operated by delivery workers alone[.]" (SAC ¶ 4). In her opposition to SDI's motion to dismiss, Plaintiff relies on several statistics regarding e-bikes from third-party sources, including that SDI held a 31% market share of the *global* e-bike battery market in 2023 and that New York City has approximately 65,000 e-bikes used by delivery workers. (*See* Pl. Opp. 3). Using those two allegations and statistics, Plaintiff asks this Court to infer that SDI

"purposefully availed" itself of the New York market.  (*Id.*).  This the Court cannot do.

    As to the first allegation, that SDI is a global provider of e-batteries, the Court finds that this fact, taken as true for purposes of evaluating this motion to dismiss, says nothing about SDI's presence in New York, but only about its worldwide prevalence.  *See Forstech Tech. Nigeria Ltd.*, 2025 WL 1435203, at *5 (finding that plaintiff could not rely on allegations that defendant company exported to the United States to establish that the company transacted business in New York).  The second allegation, that SDI's batteries are widely used in New York, where there are over 65,000 e-bikes used by delivery workers, also fails to establish that SDI transacts business in New York in a purposeful way.  As an initial matter, a fact about the prevalence of e-bikes in New York is not especially helpful in a case regarding a scooter in New York. Further, and more to the point, Plaintiff has not put forth any allegations or evidence to show that SDI ships or sells batteries, directly or indirectly, to New York.  *See Alvarado* v. *Samsung Electronics America, Inc.*, No. 156617/2021, 2024 WL 890290, at *3-4 (N.Y. Sup. Ct. Feb. 29, 2024) (finding that plaintiff failed to show that C.P.L.R. § 302(a)(1) conferred jurisdiction where (i) a Samsung entity had demonstrated, through an affidavit, that it did not distribute or sell batteries to New York for e-cigarette purposes, and (ii) plaintiff relied on Google searches listing batteries for purchase, which did not identify the Samsung entity as the seller).  "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the

basis of jurisdiction has taken place." *Chirag* v. *MT Marida Marguerite Schiffarhrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (summary order) (citing *Jazini* v. *Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  Plaintiff, despite several opportunities to amend, is unable to provide any evidence that SDI transacted business in New York.

As for the second prong of the long-arm statute inquiry (whether the "cause of action aris[es] from" SDI's transaction of business within New York, C.P.L.R. § 302(a)(1)), this "is satisfied 'when there exists an articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon.'"  *Spetner* v. *Palestine Inv. Bank*, 70 F.4th 632, 643 (2d Cir. 2023) (quoting *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (internal quotation marks omitted)).  Here, even if Plaintiff had established that SDI transacted business in New York, she has failed to show that her cause of action "aris[es] from" such transactions.  Plaintiff does allege where she purchased the scooter, and it is undisputed that she did not purchase the battery directly from SDI.  (Han Decl. ¶ 14).  Conversely, SDI asserts without refutation that it did not market its battery cells to anyone for individual sale, much less to New York residents.  (*Id.*).  Therefore, even if Plaintiff had demonstrated that SDI transacted business in New York, she has not proven that her cause of action arises from such transactions.  As such, C.P.L.R. § 302(a)(1) does not provide a basis for jurisdiction.

> ### b. Plaintiff Has Failed to Allege That SDI Should Reasonably Expect Its Acts to Have Consequences in New York Within the Meaning of C.P.L.R. § 302(a)(3)

Plaintiff also asserts that the Court has jurisdiction over SDI under

C.P.L.R. § 302(a)(3). C.P.L.R. § 302(a)(3), which governs out-of-state torts,

provides that courts have personal jurisdiction over an out-of-state defendant

who

> commits a tortious act without the state causing injury to person or property within the state, ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

C.P.L.R. § 302(a)(3). Plaintiff alleges that SDI's activities are sufficient to confer

jurisdiction under C.P.L.R. § 302(a)(3)(ii) of the statute. (Pl. Opp. 3-4). That

provision of the long-arm statute requires five elements to be satisfied:

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.

*LaMarca* v. *Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).

Of these elements, SDI argues that the fourth requirement has not been

met. (Def. Br. 13). "Whether a defendant expected or should have expected his

act to have consequences in New York is an objective test." *Berdeaux* v.

*OneCoin Ltd.*, 561 F. Supp. 3d 379, 409 (S.D.N.Y. 2021). "'New York courts

18

have asserted that the simple likelihood or foreseeability that a defendant's product will find its way into New York' is insufficient, 'and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.'" *Brownstone Inv. Grp. LLC* v. *Bonner & Partners, LLC*, No. 20 Civ. 7351 (AJN), 2021 WL 3423253, at *4 (S.D.N.Y. Aug. 5, 2021) (quoting *Kernan* v. *Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999)). Thus, to meet this element, "'foreseeability must be coupled with evidence of a purposeful New York affiliation,' such as 'a discernible effort to directly or indirectly serve the New York market[.]'" *Zanotti* v. *Invention Submission Corp.*, No. 18 Civ. 5893 (NSR), 2020 WL 2857304, at *15 (S.D.N.Y. June 2, 2020) (quoting *Schaadt* v. *T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866 (3d Dep't 1991)).

Focusing on the fourth element, Plaintiff argues that jurisdiction is appropriate under C.P.L.R. § 302(a)(3)(ii) because "SDI expected or should reasonably have expected consequences in New York given the prevalence of its batteries in e-bikes there." (Pl. Opp. 4). According to Plaintiff, "SDI's efforts to capture nearly one-third of the global e-bike battery market, combined with New York City's position as one of the largest e-bike markets in the United States," demonstrates an effort, at least indirectly, to serve the New York market. (*Id.*).

Plaintiff has not met her burden of establishing jurisdiction over SDI under C.P.L.R. § 302(a)(3)(ii). In *Kernan*, the Second Circuit addressed "the question of whether a New York court ha[d] personal jurisdiction over a

Japanese manufacturer of a machine said to have caused plaintiff's injuries in circumstances where the manufacturer's distributor in Pennsylvania sold the machine to plaintiff's employer in New York." *Kernan*, 175 F.3d at 238 (analyzing personal jurisdiction under C.P.L.R. § 302(a)(3)(ii)). Observing that "it [wa]s admittedly a close question," the Court concluded that jurisdiction was proper under C.P.L.R. § 302(a)(3)(ii). *Id.* at 242. The Court based its decision on the fact that the manufacturer and distributer had operated under an exclusive sales agreement, which enabled the distributor to sell machines throughout the United States and provided for the exchange of sales and other information between the parties. *Id.* "These facts," the Second Circuit concluded, "convince us that [the defendant] did indeed attempt to serve the New York market, even if it did so indirectly[.]" *Id.*

However, the instant case is readily distinguishable from *Kernan.* Plaintiff has not identified where she purchased the scooter, and alleges only that it displayed visible "Wuxing" markings. (SAC ¶ 12). According to SDI, however, it has never sold or supplied any battery cells or packs to "Wuxing" electric scooters. (Han Decl. ¶ 23). Unlike in *Kernan,* Plaintiff cannot point to an exclusive sales or distribution agreement between SDI and the third-party distributor in order to confer jurisdiction.[5] The record contains no evidence of

---

[5]    Numerous cases in this District rely on exclusive distribution agreements between a foreign manufacturer and third-party to establish jurisdiction over the out-of-state manufacturer based on product sales to New York consumers. *See State Farm Fire & Cas. Co.* v. *Swizz Style, Inc.*, 246 F. Supp. 3d 880, 888 (S.D.N.Y. 2017) (finding jurisdiction under New York's long-arm statute over a foreign manufacturer that supplied goods to an Ohio-based corporation pursuant to a distribution agreement); *Ikeda* v. *J. Sisters 57, Inc.*, No. 14 Civ. 3570 (ER), 2015 WL 4096255, at *5 (S.D.N.Y. July 6, 2015) (finding jurisdiction under C.P.L.R. § 302(a)(3)(ii) where the defendant sold

discernible efforts on the part of SDI to reach or serve the New York market, or even the United States market, with respect to its batteries.  Thus, Plaintiff fails to plead sufficient facts to make a *prima facie* case that this Court may exercise personal jurisdiction over Defendant under New York's long-arm statute.  *See Krisko* v. *Marvel Ent., LLC*, 473 F. Supp. 3d 288, 300 (S.D.N.Y. 2020) ("'Each element of [C.P.L.R. § 302(a)(3)(ii)] is essential, and if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision'" (quoting *Yash Raj Films (USA) Inc.* v. *Dishant.com LLC*, No. 08 Civ. 2715 (ENV) (RML), 2009 WL 4891764, at *8 (E.D.N.Y. Dec. 15, 2009))).  As a result, this action must be dismissed for lack of personal jurisdiction over SDI.

"Because there is no statutory basis for personal jurisdiction over [SDI], the Court need not reach the question of whether the exercise of jurisdiction comports with due process."  *Edwardo* v. *Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 476 (S.D.N.Y. 2022) (internal citations omitted), *aff'd*, 66 F.4th 69 (2d Cir. 2023); *see also NuMSP, LLC* v. *St. Etienne*, 462 F. Supp. 3d 330, 354 (S.D.N.Y. 2020) ("Because jurisdiction is lacking under New York law, the Court need not address whether it would be consistent with federal due process requirements."); *Trodale Holdings LLC* v. *Bristol Healthcare Invs., L.P.*,

---

its products exclusively through a domestic distributor that then sold the products in New York); *UTC Fire & Sec. Americas Corp.* v. *NCS Power, Inc.*, 844 F. Supp. 2d 366, 375 (S.D.N.Y. 2012) (finding, in case where defendant "delivered a high volume of batteries … to a major electronics distributor in North America" and "did so with the expectation — indeed, the hope — that they would be sold to customers in markets throughout the United States," that "it strains credulity that [defendant] could not have foreseen that its actions would have consequences in New York").

No. 16 Civ. 4254 (KPF), 2017 WL 5905574, at *10 (S.D.N.Y. Nov. 29, 2017)

(same).  This Court simply may not exercise personal jurisdiction over SDI.

## C.    The Court Denies Plaintiff's Request for Jurisdictional Discovery

Plaintiff argues that if the Court finds that it lacks personal jurisdiction

over SDI, the Court should permit Plaintiff to engage in jurisdictional discovery.

(Pl. Opp. 14-18).  "[W]hether to grant jurisdictional discovery when plaintiffs

fail to make a *prima facie* showing of personal jurisdiction is within the court's

discretion." *Williams* v. *Summit Marine, Inc.*, No. 18 Civ. 216 (GLS) (ATB), 2019

WL 4142635, at *6 (N.D.N.Y. Aug. 30, 2019) (citing *Best Van Lines*, 490 F.3d at

255).  Indeed, a federal court may "order limited discovery to establish personal

jurisdiction so long as plaintiff has made a threshold showing of jurisdiction

and established that his jurisdictional position is not frivolous." *Newbro* v.

*Freed*, No. 03 Civ. 10308 (PKC), 2004 WL 691392, at *3 (S.D.N.Y. Mar. 31,

2004).  "However, a court is not obligated to subject a foreign corporation to

discovery where the allegations of jurisdictional facts, construed most favorably

in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or

where a plaintiff's proposed discovery, if granted, would not uncover facts

sufficient to sustain jurisdiction." *Daventree Ltd.* v. *Republic of Azerbaijan*, 349

F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *Jazini*, 148 F.3d at 185-86; *APWU*

v. *Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

Here, Plaintiff has made no threshold showing upon which the Court

would be warranted in granting jurisdictional discovery.  All that Plaintiff

points to is SDI's substantial global market share and the prevalence of e-bikes

in New York City.  Additionally, several of Plaintiff's targeted discovery requests were already addressed by the Han Declaration, which asserted, *inter alia*, that SDI lacked any customers (*i.e.*, Packers or Manufacturers) in New York; SDI does not have any distributors in the United States or who serve the New York market; and SDI does not market its batteries in New York.  (Han Decl. ¶¶ 18-20).  Given these unrebutted factual assertions, jurisdictional discovery is unlikely to uncover facts sufficient to sustain jurisdiction.  *See Herlihy* v. *Sandals Resorts Int'l, Ltd.*, 795 F. App'x 27, 30 (2d Cir. 2019) (summary order) ("A district court may deny jurisdictional discovery where a plaintiff fails to establish a prima facie case for jurisdiction.  Here, Sandals' affidavits, submitted in support of its motion to dismiss, were sufficient for the District Court to determine that jurisdictional discovery was unwarranted, particularly in light of the "wide latitude" afforded to a district court regarding the scope of discovery." (internal citation omitted)).  Plaintiff's request for jurisdictional discovery is thus denied.

## CONCLUSION

For the foregoing reasons, SDI's motion to dismiss the Second Amended Complaint as to it is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Clerk of Court is directed to terminate the pending motion at docket entry 86.

As noted herein, this Court previously issued a default judgment against the only named Defendant remaining in this action, Samsung, Inc.  (Dkt. #61).  No effort to vacate that default judgment has been made in this action.

Accordingly, this Court will refer this matter to Magistrate Judge Gabriel W. Gorenstein for an inquest into, as appropriate, liability and damages. However, to aid Judge Gorenstein with his inquest, the Court ORDERS counsel for SDI to respond to the following questions, in writing, on or before **July 16, 2025**:

1. What is the legal relationship, if any, between Samsung SDI Co. Ltd. ("SDI"), and Samsung, Inc.?

2. Is SDI in possession of any information indicating that service was (or was not) properly effected on Samsung, Inc.? If so, what information?

3. Is SDI in possession of any contact information for relevant parties at Samsung, Inc., to whom inquiries about this case could be directed? If so, what information?

4. Is SDI in possession of any information indicating whether Samsung, Inc., has actual or constructive notice of this lawsuit? If so, what information?

For avoidance of doubt, in making this inquiry, the Court is not asking counsel for SDI to breach any applicable privileges.

Finally, an issue remains as to ABC Corporations 1-10, none of whom was identified or served with the Second Amended Complaint. Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). ABC Corporations 1-10 were named in Plaintiff's initial complaint that was filed on July 31, 2023 (Dkt. #1); they were named in the Second Amended Complaint that was filed on September 26, 2024 (Dkt. #85); and to date they

have not been identified or served in this case.  Plaintiff has not shown good cause for the failure to serve ABC Corporations 1-10, nor has she requested additional time to effect service.  Accordingly, Plaintiff is Ordered to Show Cause in writing, on or before **July 31, 2025**, why her claims against the fictitious entities ABC Corporations 1-10 should not be dismissed for failure to serve.

     SO ORDERED.

Dated:     July 2, 2025
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge